**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

SHEILA WHITE, as Administratrix
of the Estate of ROBERT WHITE,

                Plaintiff,

v.                                     CIVIL  ACTION  NO. 3:08-1449

CABELL HUNTINGTON HOSPITAL, INC.,
a West Virginia corporation; MARSHALL UNIVERSITY
BOARD OF GOVERNORS; DAVID DENNING, M.D.;
and SIROUS ARYA, M.D.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Plaintiff Sheila White's Motion For Leave to Amend Complaint (Doc. # 81).  For the reasons stated herein, the Court **DENIES** the motion.

On December 26, 2008, Sheila White filed this action against Cabell Huntington Hospital, Inc. ("Hospital"), Marshall University Board of Governors ("Marshall Board"), David Denning M.D. ("Dr. Denning"), and Sirous Arya M.D. ("Dr. Arya"), alleging negligence on the part of the defendants for their failure to diagnose and treat her deceased husband Robert White's chest flail. Mrs. White filed this action as Administrix of the Estate of Robert White, contending that the defendants' negligence occurred between September 18, 2006, and September 29, 2006, while Mr. White was under their medical care and treatment.  Plaintiff's decedent, Robert White, died on October 14, 2006, after being admitted to Our Lady of Belafonte Hospital in Ashland, Kentucky, on October 9, 2006, allegedly for complaints of severe weakness.

Plaintiff now seeks leave, pursuant to Federal Rule of Civil Procedure 15(a)(2), to amend her Complaint to add Rebecca Wolfer M.D. ("Dr. Wolfer") as a party defendant.  Plaintiff seeks to add Dr. Wolfer as a party defendant based upon her understanding that Dr. Wolfer provided care for the decedent during his admission at Cabell Huntington Hospital from September 18, 2006, until September 22, 2006.   Further, Plaintiff contends that she only recently became aware of Dr. Wolfer's involvement in her husband's care, as the result of the deposition of Dr. Denning on September 14, 2009.  *Pl.'s Mot. for Leave to Amend Compl.* (Doc. # 81), 2 ;*Pl.'s Reply to Defs.' Resp. to Pl.'s Mot. for Leave to Amend Compl.* (Doc. # 92), 2.  Accordingly, Plaintiff seeks to amend her Complaint pursuant to Rule 15(a)(2), which allows a party to amend its pleadings by leave of the Court, providing that "[t]he court should freely give [such] leave when justice so requires." *Fed. R. Civ. P. 15(a)(2).*

Defendants Marshall Board, Dr. Denning and Dr. Arya (hereinafter collectively referred to as "Defendants") and Respondent Dr. Wolfer oppose Plaintiff's motion.  In opposition, Defendants and Respondent point out that the deadline for the amendment of pleadings under the April 22, 2009, Scheduling Order was June 10, 2009, more than four months prior to the filing of Plaintiff's motion on October 22, 2009.  Accordingly, Defendants and Respondent argue that Plaintiff's motion must be subjected to the "good cause" standard established by Rule 16(b), not merely to the lenient standard for amendment prescribed by Rule 15(a)(2).  *Defs.' Resp. to Pl.'s Mot. for Leave to Amend Compl.* (Doc. # 85), 2-3.  Defendants and Respondent assert that the good cause standard of Rule 16(b) focuses upon the exercise of due diligence by the party seeking amendment and they oppose Plaintiff's motion, contending that she has failed to meet such standard.  *Id.* at 2-9.  Additionally, and in the alternative, Defendants and Respondent argue that Plaintiff's motion should be denied

2

because Plaintiff failed to bring her claim against Dr. Wolfer within the applicable statute of limitations period. *Id.* at 9.

With respect to the applicable standard of review, Defendants and Respondent are correct. Because Plaintiff's motion for leave to amend was filed *after* the Scheduling Order's deadline for the amendment of pleadings, it is subject to a two-part test which includes the application of the good cause standard provided in Rule 16(b). *See, e.g., Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D. W.Va. 1995) ("Once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b). If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a)."); *Stewart v. Coyne Textile Services*, 212 F.R.D. 494 (S.D. W.Va. 2003) (adopting and applying *Marcum*'s two-step test). Further, "the touchstone of 'good cause' under Rule 16(b) is diligence." *Marcum*, 163 F.R.D. at 254 ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment.") (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

### Plaintiff Has Not Met Rule 16(b)'s "Good Cause" Standard for Amendment

The Court finds that Plaintiff has not met Rule 16(b)'s "good cause" standard for amendment. Accordingly, Plaintiff's motion is **DENIED**.

As noted, the good cause standard established in Rule 16(b) focuses upon the diligence of the party seeking amendment. *Marcum*, 163 F.R.D. at 254. Further, as is the case where a plaintiff petitions a court to apply the discovery rule in the context of medical malpractice, this Court finds that a party seeking leave to amend her medical malpractice complaint *after* the deadline for amendment set in the scheduling order has the burden to prove that she acted with reasonable

3

diligence prior to seeking such amendment.  *See McCoy v. Miller*, 213 W. Va. 161, 166 (2003) ("This case falls into that category of cases we discussed in *Gaither* where an injury or wrong occurs of such a character that a plaintiff cannot reasonably claim ignorance of the existence of a cause of action.  In such cases, as we explained in *Gaither*, the burden shifts to the plaintiff to prove entitlement to the benefit of the discovery rule.") (citing *Gaither v. City Hospital, Inc.*, 199 W. Va. 706, 712 (1997)) (internal quotations and citations omitted); *Marcum*, 163 F.R.D. at 254 ("The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'") (quoting *Johnson*, 975 F.2d at 609).  By placing the burden of proving reasonable diligence on the party seeking amendment, the Court avoids procrastination and delay, "recognize[ing] [that] a scheduling order under Rule 16(b) is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Id.* at 253 (citing *Goewey v. United States,* 886 F.Supp. 1268, 1283 (D.S.C. 1995)) (internal quotations and brackets omitted).  Indeed, placing the burden on the party seeking to amend *after* the passage of the scheduling order's deadline confirms that "[the] scheduling order is the critical path chosen by the trial judge and the parties to fulfill the mandate of Rule 1 in 'secur[ing] the just, speedy, and inexpensive determination of every action.'" *Id.* (citing *Fed. R. Civ. P. 1*).

Additionally, as is again the case where a plaintiff petitions for application of the discovery rule, this Court finds that the reasonable diligence required to establish good cause under Rule 16(b) includes an affirmative duty to ascertain the facts surrounding the injury which serves as the basis for a malpractice claim.  *See McCoy*, 213 W. Va. at 165.  Such diligence includes conducting basic and routine inquiries during the discovery phase of litigation.  *Id.*  One such basic and routine inquiry being the determination of the identity of the injured party's medical care providers.

4

Here, Plaintiff originally sought amendment under Rule 15, not Rule 16(b).  *See Pl.'s Mot. for Leave to Amend Compl.* (Doc. # 81).  Therefore, in her initial motion papers, Plaintiff provided little to no evidence to support a finding of good cause.[1]  In their Response, Defendants (1) identified the Rule 16(b) "good cause" standard as the relevant standard for consideration of a motion to amend filed *after* the pleading amendment deadline, and (2) provided evidence that Plaintiff knew and/or – had she exercised reasonable diligence – should have known of Dr. Wolfer's involvement in the decedent's care several months before filing her motion to amend on October 22, 2009.  *Defs.' Resp. to Pl.'s Mot. for Leave to Amend Compl.* (Doc. # 85) at 2-9.  Specifically, Defendants cite (1) Plaintiff's access to the decedent's medical records prior to and throughout the course of this litigation, *id.* at 4, (2) Plaintiff's receipt of medical bills that identify Dr. Wolfer as one of her husband's treating physicians as early as July 7, 2009[2], *id.* at 7-8, and (3) Defendants' disclosure to Plaintiff, on July 24, 2009, of Dr. Wolfer as a fact witness who "saw Mr. White in the SICU on September 18, 19, 20 and 21, 2006."  *Id.* at 8.

In reply to Defendants' Response, Plaintiff filed a "Surreply to Defendants, Marshall University Board of Governors; David Denning, M.D.; and Sirous Arya M.D.'s Response to

---

[1]Specifically, the only statement in the original motion that can be construed to support a finding of good cause is: "Plaintiff [] has only recently become of Dr. Wolfer's involvement with her husband's care.  On September 14, 2009, at defendant David Denning M.D.'s deposition, Plaintiff was informed for the first time that Dr. Denning did not see and/or examine Mr. White throughout his hospitalization at Cabell Huntington Hospital from September 18, 2006 to September 22, 2006, even though the medical record identifies Dr. Denning as Mr. White's attending physician."  *Id.* at 2.

[2]The pertinent medical bills are attached to Defendants' Response as Exhibit B and, according to the document, were provided to Plaintiff as an exhibit attached to *Defendant, Marshall University Board of Governors' Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents to Defendant, Marshall University Board of Governors* on July 7, 2009.  *Id.* at 7.

Plaintiff's Motion For Leave to Amend Complaint" on December 3, 2009. *See Pl.'s Reply to Defs.' Resp. to Pl.'s Mot. for Leave to Amend Compl.* (Doc. # 92). This Reply, filed approximately two weeks late, attempts to establish good cause for Plaintiff's delay in filing her motion to amend. *See Id.* Specifically, Plaintiff alleges that she did not know and/or could not have been expected to know of Dr. Wolfer's role in her husband's care because Defendants did not (1) identify Dr. Wolfer as an "individual[] likely to have discoverable information" in their May 26, 2009, Rule 26(a)(1) disclosures, or (2) disclose and/or reference Dr. Wolfer in their response to Plaintiff's *First Set of Interrogatories and Requests of Production to David Denning M.D.*, which was filed in early July 2009.[3] *Id.* at 1-2. Further, Plaintiff contends (1) that "it was not until July 24, 2009 (two months after defendants 26(a)(1) disclosure) that Dr. Wolfer was identified by the defendants, through supplemental disclosure, as a person with 'knowledge,'" *id.* at 2, and (2) that it was not until September 14, 2009, that Plaintiff "learn[ed] of Dr. Wolfer's true role in her husband's care." *Id.*

If Plaintiff's contention – that neither the medical records nor Defendants' disclosures identified Dr. Wolfer as a treating physician until September 2009 – was correct, then the Court would be inclined to grant her motion. However, in the instant case, the Court finds Plaintiff has failed to meet her burden of proving such good cause. *See Fed. R. Civ. P. 16(b).* First, Plaintiff does not dispute that on July 24, 2009, Defendants disclosed to Plaintiff that "Dr. Wolfer *saw* Mr. White in the SICU on September 18, 19, 20 and 21, 2006." *See Defs.' Resp. to Pl.'s Mot. for Leave to Amend Compl.* (Doc. # 85) at 8 (emphasis supplied). This disclosure put Plaintiff on notice that Dr. Wolfer provided medical treatment and care to Plaintiff's husband during his admission at the

---

[3]Specifically, Plaintiff notes that Dr. Wolfer was not identified and/or referenced "as an individual 'who may have knowledge to this cause of action.'" *Id.* at 2.

Hospital between September 18, 2006, and September 21, 2006, as early as July 24, 2009. Additionally, the portion of Mr. White's medical records attached to Defendants' Response, which Plaintiff could have obtained through discovery, reflect that Dr. Wolfer saw Mr. White during his admission at the Hospital.[4] *See Cabell Huntington Hospital "Progress Notes," Defs.' Resp. to Pl.'s Mot. for Leave to Amend Compl.,* Ex. A (Doc. # 85-1).    Accordingly, the Court finds that – had Plaintiff exercised reasonable diligence in reading Mr. White's medical records and in reviewing Defendants' discovery responses – she could have more fully discovered the facts surrounding her husband's claim for medical malpractice and known of Dr. Wolfer's role in her husband's care as early as July 24, 2009, approximately three months before filing this motion.

Unfortunately, based on her own averments, it appears that Plaintiff did not become aware of Dr. Wolfer's "true role" in her husband's care until September 14, 2009.  As a result, the Court **FINDS** that Plaintiff did not exercise reasonable diligence with respect the amendment of her pleading, *see Marcum*, 163 F.R.D. at 254 ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."), and her motion to amend is consequently **DENIED** under Rule 16(b).

---

[4]Although these records are handwritten and may therefore be difficult to decipher, the records contain the initials and signatures of Mr. White's treating physicians.  As a result, the Court finds that – had she exercised reasonable diligence – Plaintiff could have used these records to identify Dr. Wolfer as one of her husband's treating physicians.

**Plaintiff's Also Fails to Meet the Liberal Standard for Amendment Under Rule 15(a)**

Because Plaintiff failed to show "good cause" for amendment under Rule 16(b), the Court need not conduct an analysis of Plaintiff's motion under Rule 15. *See Id.* at 254 ("If [the] party [seeking amendment] was not diligent, the inquiry should end.").  Nonetheless, the Court finds it prudent to note that Plaintiff's motion fails – as untimely and prejudicial – even under the liberal standard set by Rule 15(a). *See Marcum*, 163 F.R.D. at 254 ("The Rule 15(a) inquiry ... focuses substantially on the prejudice to the opposing party if leave to amend is granted.  For instance, while a party might easily establish good cause for modification of the scheduling order to support an amendment to the complaint, the amendment yet might prejudice the defendant.  In that instance, leave to amend likely would be denied pursuant to Rule 15(a).")  Here, Plaintiff filed her motion to amend on October 22, 2009, when the parties were well into the discovery phase of their litigation. At that time, numerous depositions had been noticed and taken, and the April 22, 2009, Scheduling Order had been amended twice, both times to extend the deadline for the parties' expert disclosures under Rule 26(a)(2).  This amended deadline for Plaintiff's initial expert disclosures passed, on November 14, 2009, such disclosures were made at that time, and Defendants' responsive disclosures are due next week, on December 14, 2009.

Based on these facts, the Court **FINDS** amendment inappropriate even under the liberal standard provided by Rule 15(a).  Adding a party at this late juncture would disrupt the already amended scheduling order and would likely delay trial.  Defendants oppose Plaintiff's motion and, because such amendment might prejudice Defendants, the Court **FINDS** that Rule 15(a) supports **DENYING** the motion.

8

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER:          December 10, 2009

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

9